UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KRISTINE "KRIS" HERPIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-2138-B |
| | § | |
| AMERICAN LEATHER OPERATIONS, | § | |
| LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION & ORDER

Before the Court is Defendant American Leather Operations, LLC ("American Leather")'s Motion to Dismiss (Doc. 13). For the following reasons, the Court **GRANTS** American Leather's Motion and **DISMISSES** Plaintiff Kristine Herpin's Amended Complaint **WITH PREJUDICE**. A final judgment will follow.

I.

BACKGROUND

This is a wrongful termination and unequal pay case. Herpin worked as an Executive Assistant to the President of American Leather between February 2019 and April 2023. Doc. 12, Am. Compl., ¶ 6. As an Executive Assistant, Herpin "received [the President's] complete and unlimited trust with every detail of [the President's] personal and professional life." *Id.* ¶ 25. Herpin performed administrative tasks, such as "booking personal trips for [the President] and extended family, researching venues for daughter's birthday parties, processing online returns, registering for race competitions, [and] making doctor appointments." *Id.*

In June 2022, Herpin alleges she assumed one-third of the responsibilities held by the former Vice President of American Leather, who was a male. *Id.* ¶ 10. These responsibilities included: planning American Leather's trade shows alongside "hospitality, marketing, and corporate functions." *Id.* ¶ 11. The Vice President earned $210,000 per year. *Id.* ¶ 13. Herpin believed she was entitled to a $70,000 raise because she assumed one-third of his responsibilities. *Id.* ¶ 14. Herpin requested a raise "to match the extra work that she had accepted" multiple times *Id.* ¶ 16. In February 2023, American Leather approved a $10,000 pay increase for Herpin, *id.* ¶ 18, making Herpin's total salary $110,000. *Id.* ¶ 8.

In March 2023, Herpin read an email that revealed two senior executives were having an affair. *Id.* ¶ 29. The higher ranking executive provided "sexual favoritism" to the other executive by taking them on company trips at American Leather's expense, "having an inside track to executive management decisions[,] and having business knowledge that other similar managers possessed." *Id.* ¶ 31. After the executives discovered Herpin knew about the affair, "their attitudes towards Herpin turned sour." *Id.* ¶ 33.

On April 3, 2023, Herpin asked for an additional raise. *Id.* ¶ 37. The President told Herpin that "she was done with Herpin" asking for additional raises. *Id.* Herpin

> explained that given her acceptance of the [Vice President's] responsibility and the amount of money the company paid the [Vice President] and given the number of hours it was taking her to perform these extra duties while still performing 100% of her prior Executive Assistant duties . . . her minimal pay raise was unfair.
>
> *Id.*

In response, the President told Herpin "things . . . were not working out." *Id.* ¶ 38. "Herpin took that to mean that (1) if she continued to ask for fair pay, she would be fired; and (2) that the conversation was over." *Id.*

The next day, Herpin was informed that she was terminated. *Id.* ¶ 41. However, Herpin was told she could file for unemployment and that American Leather "would not push back." *Id.*

In August 2024, Herpin filed this suit against American Leather. *See* Doc. 1, Compl. She asserts five claims against American Leather: Wrongful Termination under the Equal Pay Act ("EPA"), Unequal Pay under the EPA, Failure to Pay Overtime Wages under the Fair Labor Standards Act ("FLSA"), Wrongful Termination under Title VII, and Future Unequal Pay under Title VII. Doc. 12, Am. Compl., ¶¶ 65–88. American Leather filed a Motion to Dismiss, seeking to dismiss the Complaint in its entirety with prejudice. Doc. 13, Mot., 1. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation and internal quotations omitted). But the "court will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

III.

ANALYSIS

The Court **GRANTS** American Leather's Motion to Dismiss and **DISMISSES** Herpin's Complaint **WITH PREJUDICE**. First, Herpin failed to state a claim for retaliation under Title VII. Second, Herpin failed to state a claim for unequal pay under the EPA or Title VII. Third, Herpin failed to state a retaliation claim under the EPA. Fourth, Herpin failed to state a claim under the FLSA. Fifth, the Court denies Herpin leave to amend her Complaint.

A.    *Herpin Failed to State a Claim for Wrongful Termination Under Title VII.*

Herpin failed to state claim for retaliation under Title VII because she did not allege that she engaged in a protected activity. Herpin alleges her termination was retaliatory. Doc. 12, Am. Compl., ¶ 66. To make a prima facie showing of a retaliatory discharge under Title VII, Herpin must allege: "1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 610 (5th Cir. 2005). Herpin alleges that "she became aware of an adulterous

-4-

affair between two senior executives," and the executives "engineered her termination based on pretext." Doc. 12, Am. Compl., ¶ 80. But this does not make out a prima facie case.

Awareness of an affair is not a protected activity. A "protected activity" under Title VII is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quotations omitted); 42 U.S.C. § 2000e-3(a). The Fifth Circuit "has expressly held that discrimination based on an employee's knowledge of an affair between two co-workers fails to form the basis of a Title VII claim." *Jusuf v. S.W. Airlines Co.*, No. 08-10383, 2008 WL 4948615, at *4 (5th Cir. Nov. 20, 2008); *see also Ellert v. Univ. of Tex.. at Dall.*, 52 F.3d 543, 546 (5th Cir. 1995) (declining to accept "the proposition that a Title VII claim can be based upon a supervisor's voluntary sexual relations with a subordinate").

Crucially, Herpin does not allege that she reported the affair, complained about the affair, or made her knowledge of the affair known to anyone. *See generally* Doc. 12, Am. Compl. Nor does she allege that she participated in any investigation, proceeding, or hearing related to the affair. *See id.* Because Herpin failed to allege she participated in a protected activity, the Court need not consider whether she alleged that an adverse employment action occurred or whether there was a causal link between the protected activity and adverse action.

Herpin relies on *Garvin v. Southwest Correctional, LLC* to argue that the Fifth Circuit has not "decisively ruled on the issue" of whether knowledge of an affair is a protected activity. Doc. 17, Resp., 21; 391 F.Supp.3d 640, 650 and 650 n.7 (N.D. Tex. 2019) (Boyle, J.). But there, the Court discussed whether sexual favoritism can constitute an unlawful employment practice. In *Garvin*, a male plaintiff sued the defendant for showing preferential treatment to a female employee with

whom the defendant was having an affair. *Id.* at 646. He alleged that the woman received a higher pay and a superior title than the plaintiff even though she was "significantly less qualified and experienced." *Id.* When he complained to the defendant about the woman's behavior, the defendant reprimanded him. *Id.* The Court stated, "if a plaintiff can show that the favoritism adversely affected one gender more than the other," a claim for hostile-work-environment may survive. *Id.* at 650. But here, Herpin never alleged that she addressed anyone about the affair. Thus, she failed to state a claim.

B.    *Herpin Failed to State a Claim for Unequal Pay Under the EPA or Title VII.*

To state a claim under the EPA, Herpin must allege "(1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) that she was paid less than members of the opposite sex." *Jones v. Flagship Intern.*, 793 F.2d 714, 722–23 (5th Cir. 1986); *see also* 29 U.S.C. § 206(d)(1). "Generally, a Title VII wage discrimination claim parallels that of an EPA violation. . . . Unlike an EPA claim, however, to prevail under Title VII, the plaintiff must prove discriminatory intent." *Montgomery v. Clayton Homes Inc.*, 65 F. App'x 508, 508 (5th Cir. 2003).

As a preliminary matter, Herpin does not allege that American Leather is subject to the EPA. Next, she failed to allege that she was paid less than members of the opposite sex for similar work. To establish "equal work" under the EPA, Herpin must allege that the "'skill, effort and responsibility' required in the performance of the jobs is 'substantially equal.'" *Jones*, 793 F.2d at 723 (quoting *Pearce v. Witchita Cnty., City of Witchita Falls, Tex. Hosp. Bd.*, 590 F.2d 128, 133 (5th Cir. 1979)). "The Act necessarily requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated." *Id.* "Title VII incorporates a more relaxed

standard of similarity between male and female-occupied jobs," so Herpin is not required to allege "the exacting standard of substantial equality of positions set forth in the Equal Pay Act." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 n.15 (5th Cir. 1992). Here, she fails to allege a comparator under either Title VII or the EPA.

Herpin alleges that she was an Executive Assistant, yet she selects American Leather's Vice President as a comparator. Doc. 12, Am. Compl., ¶ 10. Herpin alleges that she assumed one-third of the responsibilities previously held by the Vice President of Hospitality, a male employee. *Id.* She alleges that the Vice President earned $210,000, and accordingly, she should have been paid an additional $70,000—one-third of his salary—after assuming one-third of his responsibilities. *Id.* ¶ 13. The Court is not persuaded.

Even if Herpin assumed some of the Vice President's responsibilities, it does not support her claim that "her skill, effort, and responsibility" were "substantially similar" to the Vice President's. *Jones*, 793 F.2d at 723. A Vice President has significantly more responsibility than an Executive Assistant, and the job itself requires different credentials and educational backgrounds. The Court cannot infer, based on the facts alleged, that simply because an executive assistant assumed one-third of the work of the Vice President, she should receive one-third of his salary as a raise. And the one-third of work she assumed might have been less substantive than his other responsibilities. Or American Leather might have set the Vice President's salary based on other factors like stress, working after-hours, and managing other employees. The intangibles involved in salary determinations make it impossible for the Court to infer that Herpin is entitled to one-third of the Vice President's salary because she assumed one-third of his work. While it might make a persuasive case for a raise, it does not make out a legal claim for wage discrimination. Thus, because Herpin

failed to allege that she was paid less than a male in a substantially similar position, she failed to allege a claim under the EPA and Title VII.

C.      *Herpin Failed to State a Retaliation Claim Under the EPA.*

Herpin failed to state a retaliation claim under the EPA because she did not allege she engaged in a protected activity. To state a retaliation claim under the EPA, Herpin must allege that (1) she engaged in protected activity; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017).

"To be a protected activity, the employee's conduct must have opposed the employer's practice and the plaintiff must have reasonably believed the practice was unlawful." *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 348 (5th Cir. 2023) (internal quotations and emphasis omitted). In other words, the protected activity must reference the alleged discrimination, because complaining about unfair treatment generally is not a protected activity. *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011). Herpin alleges that she was fired "in unlawful retaliation for [the] protected activity [of] seeking to be paid the same as a male employee doing identical or substantially similar work." Doc. 12, Am. Compl., ¶ 66. But this is a conclusory allegation. Herpin does not allege that she asked for a raise because she was earning less than a man. She does not allege that she complained about unlawful pay practices. Instead, she asked for a raise because of her increased responsibilities and hours worked. *Id.* ¶ 37. Herpin's general complaint about unfair pay, unconnected to her status as a woman, does not constitute a protected activity. *See Davis*, 448 F. App'x at 493.

D.    *Herpin Failed to State a Claim for Failure to Pay Overtime Wages Under the FLSA.*

Section 207(a) of the FLSA requires covered employers to pay nonexempt employees for working overtime. 29 U.S.C. § 207(a). Section 216(b) allows employees to sue employers for violating the overtime compensation requirements. *Id.* § 216(b). However, the statute creates an exemption from the overtime requirements for employees in professional, administrative, and executive positions. *Id.* § 213(a)(1). Herpin alleges that American Leather "wrongfully failed to pay [her] overtime wages required by the FLSA," Doc. 12, Am. Compl., ¶ 76, and that "she was improperly classified as an exempt employee and not paid overtime." *Id.* ¶ 21.

The Court must first determine whether Herpin's FLSA claim is barred by the statute of limitations. The statute of limitations for the FLSA is two years, but it is extended to three years if the violation is willful. 29 U.S.C. § 255(a). A violation is willful if the employer "'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir.1994) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Here, Herpin alleges no facts to suggest the conduct was willful, so the two-year time limit applies. Herpin filed her suit on August 21, 2024, so any claim dating before August 21, 2022 is time-barred. As a result, Herpin can only seek unpaid overtime for the hours worked between August 21, 2022 and April 3, 2023 (the date of Herpin's termination).

Next, the Court must determine whether § 213(a)'s Administrative Professional Exemption applies to Herpin between August 21, 2022 and her termination. To qualify for the exemption, Herpin (1) must earn more than $684 per week; (2) her primary duty must be "non-manual work directly related to the management or general business operations of the employer"; and (3) her primary duty must include "the exercise of discretion and independent judgment with respect to

matters of significance." 29 C.F.R. § 541.200(a) (2020) (amended 2024). For a "primary duty" to be considered directly related to the management or general business operations, an employee must "perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* § 541.201(a). The statute defines an employee's "primary duty" as the "principal, main, major or most important duty that the employee performs." *Id.* § 541.700(a). "An executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance." *Id.* § 541.203(d).

The Administrative Professional Exemption applies to Herpin. Herpin served as the Executive Assistant to the President of American Leather. Doc. 12, Am. Compl., ¶ 6. She also alleges that in June 2022, she assumed one-third of the responsibilities of the former Vice President, including "responsibility for American Leather's trade show participation, planning, and presence; and [she became] an event planner and project manager for hospitality, marketing, and corporate functions." *Id.* ¶ 11. She alleges she performed these tasks "in a position and manner requiring equal skill, effort, and responsibility under similar working conditions." *Id.* ¶ 12. As an Executive Assistant, Herpin alleges she received the President's "complete and unlimited trust with every detail of [the President's] personal and professional life." *Id.* ¶ 25. Herpin explicitly alleges that, after June 2022, many of her duties were directly related to the running of American Leather. *See id.* ¶ 11. By her own admissions, Herpin states that part of her duties were identical to those of the Vice President.

She cannot simultaneously argue that her employment did not fall under the Administrative Professional Exemption. Accordingly, Herpin fails to state a FLSA claim.

E.    *The Court Does Not Grant Leave to Amend.*

The Court **DISMISSES** all claims **WITH PREJUDICE**. A plaintiff's failure to plead a claim should not automatically result in dismissal with prejudice. *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). However, a court may dismiss a claim with prejudice if the pleading defect is incurable or if the plaintiff has had other opportunities to amend his complaint. *Id.* Herpin filed an Amended Complaint after American Leather filed its first Motion to Dismiss, so she has already had the opportunity to amend and respond to the arguments that American Leather raised in its original motion to dismiss.

Moreover, the Court finds the pleading defects incurable. Herpin's Wrongful Termination claim under Title VII fails because the activity she claims to have engaged in is not protected. Her unequal pay claims under Title VII and the EPA fail because the Vice President is not a suitable comparator. Her Retaliation Claim under the EPA fails because it is not reasonable to believe that complaining about pay in general is unlawful. Her FLSA claim fails because her position falls within the language of the Administrative Professional Exemption. Thus, alleging additional facts will not cure the pleading deficiencies in any of her claims. The Court does not grant leave to amend. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** American Leather's Motion to Dismiss and **DISSMISES** the Complaint in its entirety **WITH PREJUDICE**. A final judgment will follow.

SO ORDERED.

SIGNED: March 31, 2025.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE